[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12739
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cr-00360-CAP-AJB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRY STINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 10, 2016)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Terry Stinson appeals his convictions and 57-month total sentence imposed after a jury found him guilty of conspiracy to defraud the Supplemental Nutrition Assistance Program (SNAP) and Georgia's Women, Infant, and Children (WIC) program, in violation of 18 U.S.C. §§ 1343 and 1349, WIC benefit fraud, in violation of 42 U.S.C. § 1760(g) and 18 U.S.C. § 2, and SNAP benefit fraud, in violation of 7 U.S.C. § 2024(b)(1) and 18 U.S.C. § 2.  Stinson asserts two issues on appeal, which we address in turn.  After review,[1] we affirm Stinson's convictions and sentence.

## I.  DISCUSSION

### A.  *Voluntary statements*

Stinson first contends the district court erred when it found that incriminating statements he made to law enforcement were knowingly and voluntarily made, and elicited outside the context of custodial interrogation.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), "established that custodial interrogation cannot occur before a suspect is warned of [his] rights

---

[1]  "A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Timmann*, 741 F.3d 1170, 1177 (11th Cir. 2013) (quotations omitted). We review the district court's factual findings for clear error and the court's application of the law to the facts *de novo*.  *Id.*  We review the district court's determination that a defendant is subject to an aggravating role enhancement under U.S.S.G. § 3B1.1 for clear error. *United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999).

against self-incrimination." *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007). Pre-custodial questioning, in contrast, does not require *Miranda* warnings. *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006). We have described the test for determining custody as follows:

> A defendant is in custody for the purposes of *Miranda* when there has been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Whether [a defendant] was in custody prior to his formal arrest depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave. The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant. Under the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person.

*United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quotations, citations, alteration, and emphasis omitted).

We consider several factors in determining custody, "including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled." *Street*, 472 F.3d at 1309 (quotation omitted). An interviewee's "status as a suspect, and the 'coercive environment' that exists in virtually every interview by a police officer of a crime suspect," does not automatically create a custodial situation. *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000).

The district court did not err in finding that Stinson's statements were voluntary and not made while he was under custodial interrogation. Although

3

Stinson had some restriction in his movement while the search of his home was ongoing, the officers did not restrict his freedom to such a degree that a reasonable innocent person would believe he was in "custody." *See Brown*, 441 F.3d at 1348-49 (holding the defendant was not in custody in part because he was in a familiar setting and because, "[a]lthough an officer accompanied him throughout the house for safety reasons, he was free to eat, smoke, use the phone, and move about as he wished"). Importantly, Stinson was not physically restrained and he terminated the interview and left, without interference from the officers. *See Muegge*, 225 F.3d at 1271 (stating a reasonable person who is told that he may leave an interview at any time is not under custodial interrogation, provided the interrogators did not restrain the suspect in such a way to make the statement meaningless). Moreover, while the officers had visible firearms, the weapons remained in their holsters throughout the interview. Lastly, the interview, which was conducted at Stinson's home, did not occur in an unfamiliar environment, such as a police station. Therefore, considering the totality of the circumstances, Stinson was not in custody during the interview and, given these circumstances as well as the absence of threats, violence, or other forms of coercion, his statements to the police were made voluntarily. *See United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010) ("[T]he issue of voluntariness must be determined by examining the totality of the circumstances.").

4

*B.  Leadership role*

Stinson also contends the district court clearly erred by finding he was an organizer or leader of criminal activity that involved five or more participants and enhancing his offense level under the Sentencing Guidelines by four levels pursuant to U.S.S.G. § 3B1.1(a).

Section 3B1.1(a) provides a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]"  U.S.S.G. § 3B1.1(a).  The commentary to § 3B1.1 sets out several factors for courts to consider in determining if the defendant is an organizer or leader, as opposed to a mere manager or supervisor, including the following: (1) the defendant's exercise of decision making authority; (2) the nature of participation in the offense; (3) recruiting accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the crime; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others.  U.S.S.G. § 3B1.1, comment. (n.4).

The district court did not clearly err in finding that Stinson was subject to an aggravating role enhancement under § 3B1.1(a).  First, Stinson was the owner of the stores wherein the fraud occurred, such that he had ultimate control and authority over the actions of the other actors in the fraud.  Second, the undisputed

5

PSI facts reveal that Stinson was the primary instigator of the fraud. *See United States v. Bennett*, 472 F.3d 825, 833-34 (11th Cir. 2006) (stating the failure to object to facts contained in a PSI admits them for sentencing purposes). Stinson directed his employees to participate in the fraud, trained employees how to participate, and brought cash to the store in order to assist his employees in realizing his scheme. The PSI facts also revealed that Stinson was integral to the planning and organization of the crime—he maintained the lists of "special customers" and took control when those extraordinary transactions occurred. Lastly, as the owner of the businesses, Stinson would have the highest share of the fruits of the crime. Therefore, the district court did not err in finding that the four-level enhancement applied.[2] *See* U.S.S.G. § 3B1.1, comment. (n.4).

## II. CONCLUSION

The district court did not err in finding that Stinson voluntarily made the purportedly incriminating statements because Stinson made the statements at his home, was free to leave, and terminated the interview and left of his own volition. Moreover, the district court did not err in imposing a four-level enhancement to

---

[2] While Stinson argues it is disproportional for him to receive the four-level leadership-role enhancement when his accomplice and general manager, Doby, received a two-level reduction, the calculation of Doby's guideline range has no probative value with respect to whether Stinson was a leader in the criminal activity. Additionally, sentencing disparities between codefendants are typically an inappropriate basis for relief on appeal. *United States v. Regueiro*, 240 F.3d 1321, 1325-26 (11th Cir. 2001). Therefore, Stinson's disproportionality argument was not a valid reason to change Stinson's advisory guideline range and is not a valid basis for reversal on appeal.

Stinson's offense level pursuant to U.S.S.G. § 3B1.1(a) for being a leader in a criminal scheme that involved five or more participants.

**AFFIRMED.**